IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-1501-RM-MLC

KIMBERLY AUBREY,

        Plaintiff,

v.

CARLY KOPPES, in her capacity as Weld County Clerk and Recorder, and
WELD COUNTY, COLORADO BOARD OF COUNTY COMMISSIONERS,

        Defendants.

---

## RECOMMENDATION ON MOTION TO DISMISS

---

Magistrate Judge Mark L. Carman

This matter comes before the court on *Defendant Weld County Board of County Commissioner' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*. The Motion was referred to Magistrate Judge Carman pursuant to the Order of Reference dated November 13, 2017 (Doc. 28). The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the court recommends that the Motion be Granted in Part and Denied in Part.

### BACKGROUND

Kimberly Aubrey ("Plaintiff") filed her initial complaint on June 20, 2017 in this matter. Following the filing of a motion to dismiss Plaintiff filed an Amended Complaint (Doc. 21). The Amended Complaint named Carly Koppes, in her official capacity, and the Weld County Board of Commissioners ("Defendants"). The Amended Complaint set forth three causes of action.

1. Disability discrimination in violation of the Americans with Disability Act ("ADA" or "ADAAA"), the Rehabilitation Act and the Colorado Anti-Discrimination Act ("CADA").

2. Retaliation in violation of the ADA, the Rehabilitation Act and the Colorado Anti-Discrimination Act.

3. Failure to provide reasonable accommodation in violation of the ADA, the Rehabilitation Act and the Colorado Anti-Discrimination Act.

Plaintiff alleges that she was hired by the Weld County Clerk and Recorder as a Technician II in the Motor Vehicle Department in June of 2012 and promoted to a Technician III in December of 2012. At some point she was transferred to the Elections Department.

In late 2014 the Plaintiff was diagnosed with Posterior Reversible Encephalopathy Syndrome, a serious medical condition with neurological impact, which rendered her disabled. At times she was confined to bed, experienced seizures and was in a coma. As a result of this condition the Plaintiff requested and received Family Medical Leave from her position in the Elections Department on or about December 8, 2014. The leave was exhausted on or about February 22, 2015. Plaintiff's doctor notified Weld County Human Resources that it was anticipated that the Plaintiff should be able to return to work August 1, 2015. Plaintiff was recovering and sought to see her neurologist to obtain a release to return to some level of work. Being unable to see her neurologist in Denver, she made an appointment for a neurologist in Greeley, Colorado on May 22, 2015 to obtain a work release for some type of work prior to the August 1, 2015 date.

On April 15, 2015 the Plaintiff received a pre-dismissal notice which indicated Plaintiff was unable to perform the essential functions of her job and could not be accommodated. (Doc.

21, ¶¶ 22-23).[1] Plaintiff alleges that Defendants had not inquired as to restrictions on the Plaintiff's activities, nor what accommodations might allow Plaintiff to perform the essential functions of her job. Plaintiff further alleges that at the time of the pre-dismissal notice Plaintiff was able to perform the essential functions of her job with unspecified accommodation. A pre-dismissal hearing was set for the morning of April 16, 2015. During the hearing it was made clear that the Plaintiff's job performance was good and she was qualified for the position. Portions of a transcript of the hearing were quoted in the Amended Complaint which indicated a strong desire by Plaintiff to return to work, as well as some statements as to continued problems. When asked if she could return to work in the next couple of weeks, Plaintiff stated:

> Plaintiff: Actually, if you asked me to, I could come back next week. But I would not be able to do the things you asked me to. I mean, I could not go to Motor V. I would probably have to be somewhat retrained. I am finally remembering some of the things I did in election, you know.

(Doc. 21, ¶ 35). In addition, Plaintiff said she would need some prompting, could not drive a car, and was having problem with her vision which made some tasks difficult. She expressed that she would take a Technician II position and that she had an appointment to see her doctor on May 22, 2015.

On April 20, 2015 Defendants informed Plaintiff by letter that due to her inablilty to return to work until July 31, 2015[2] that she was being dismissed from her employment with the Weld County Clerk & Recorder's office immediately. On June 4, 2015 Plaintiff's neurologist sent a release to return to work for Plaintiff. Apparently, Defendants requested some clarification regarding the release to work document. At some point the Defendants informed

---

[1] The court assumes the Amended Complaint has a typographical error in the year and that the notice was dated April 15, 2015.

[2] There is an apparent mistaken reference to July 31, 2015 in some of the documentation. The doctor had indicated an expected return to work date of August 1, 2015. The single day difference is not significant.

Plaintiff that the only available positon was in the Motor Vehicle Department. The Amended Complaint indicates that Plaintiff could have performed some tasks in the Motor Vehicle Department, but could not have worked "front line dealing with customers" (Doc. 21 ¶ 50). Apparently the Plaintiff was offered a position in the Motor Vehicle Department, and informed Defendant that she could not work with the public. Pleadings following Plaintiff's termination are vague and it is difficult to determine when conversations occurred between Plaintiff and Defendants and what positions were available.

## STANDARD OF REVIEW

### B. Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all wellpleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the Complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678

(internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Ashcroft*, 556 U.S. at 679. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id.* at 678. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendants assert that Plaintiff's Amended Compaint fails to set forth a recognizable claim, but rather establishes that the Plaintiff was unable to perform the essential functions of her job, with or without reasonable accommodation.

### Claim I: Americans With Disablities Act and the Colorado Anti-Discrimination Act

These parallel statutes prohibit employers from discriminating against employees based upon disability and requires employers to make reasonable accommodations to qualified individuals, unless the accommodations impose an undue hardship on the employer. 42 U.S.C. §§ 12102, *et seq.* and Colo. Rev. Stat. §§ 24-34-401, *et seq.* A prima facie case of discrimination requires the establishment of three elements: the plaintiff (1) is a disabled person as defined by

5

the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability. *Zwygart v. Bd. of Cty. Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007); *Carter v. Pathfinder Energy Servs., Inc.* 662 F.3d 1134, 1142 (10th Cir. 2011); and *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014). As noted above, the Plaintiff is not required to establish a prima facie case, but a review of the elements of the cause will assist the court in determining if plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Plaintiff's claims pursuant to the ADA and the CADA will be considered together. The ADA and CADA are parallel statutes and the Colorado courts rely upon ADA cases in the interpretation of the CADA. *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 763-766 (Colo. App. 1988). In the context of this case neither party had identified any aspect of the CADA which differs from the ADA. Therefore, the CADA claims will be determined by the consideration of Plaintiff's claims pursuant to the ADA.

1. **Plaintiff disabled as defined by ADA.**

Disability is defined at 42 U.S.C. § 12102 of the ADA as follows:

> (1) Disability
>
> The term "disability" means, with respect to an individual--
>
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>> (B) a record of such an impairment; or
>>
>> (C) being regarded as having such impairment (as described in paragraph (3)).
>
> (2) Major life activities
>
>> (A) In general
>>
>> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing,

6

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is impairment with an actual or expected duration of 6 months or less.

(4) Rules of construction regarding the definition of disability

The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

(A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

(C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

> (E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--
>
>> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
>>
>> (II) use of assistive technology;
>>
>> (III) reasonable accommodations or auxiliary aids or services; or
>>
>> (IV) learned behavioral or adaptive neurological modifications.
>
> (ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.
>
> (iii) As used in this subparagraph--
>
>> (I) the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and
>>
>> (II) the term "low-vision devices" means devices that magnify, enhance, or otherwise augment a visual image.

It is unclear from the briefing if Defendants are contesting the Plaintiff's allegations regarding the first element of disability. Defendants assert that Plaintiff does not properly allege element one, which is the disability of Plaintiff. (Doc. 23 p. 5). Nevertheless, Defendants do not appear to actually challenge the disability of Plaintiff, and in fact assert that Plaintiff was unable to perform the essential functions of her job at the time of her dismissal. (*Id.* at p. 2).

The pleadings do establish that Plaintiff was disabled within the definition of the ADA. The illness impacted her cognitive abilities, concentration, memory and vision. This is apparently a temporary condition, and Plaintiff was recovering from the illness. Plaintiff's

8

Amended Complaint does not discuss if the Plaintiff has any residual disability following her recovery, but does assert that she was no longer "substantially limited" by the illness. (Doc. 21 ¶ 57).

**2. Performance of essential functions, with or without reasonable accommodation.**

Defendants emphasize that at the time of Plaintiff's discharge the treating physician had indicated an anticipated return to work of August 1, 2015, or about three months following Plaintiff's termination. Defendants read Plaintiff's complaint as confirming that Plaintiff was unable to perform the essential functions of her job at the time of dismissal. Defendants refer to Plaintiff's allegations regarding her ability to return to work as conclusory.

Plaintiff asserts that she has sufficiently pled that she was able to return to work with accommodation, while acknowledging that the complaint does not set forth the essential functions of the job or the nature of such accommodation. Plaintiff notes that the portions of the pre-termination hearing reported in the complaint establish that the Plaintiff could return to work the following week, with some retraining. In her Amended Complaint Plaintiff is quoted at the pre-termination hearing of telling Defendants that she would come back in a lesser position of a Technician II and that she needed time to see her doctors so she can obtain a release to return to work. She had an appointment set for May 22, 2015. The portions of the pre-termination transcript provided do not contain any discussion regarding the essential functions of the position(s) or what reasonable accommodation would have allowed the Plaintiff to perform such functions.

Plaintiff was recovering from a serious illness, and she was still suffering significant disability at the conclusion of the Family Medical Leave. Based upon the transcript of the pre-termination hearing included within the Amended Complaint, the Plaintiff was unable to return

9

to her regular duties. First of all, the Plaintiff did not have a release from her medical care provider to return to work. Secondly, her statements in the transcript would appear to support the Defendant's assertion that she was unable to return to her duties. When asked about her ability to return to work "within the next couple of weeks" she said she could come back the following week, "[b]ut I would not be able to do the things you asked me to. I mean, I could not go to Motor V." (Doc. 21 ¶ 35). She then proceeded to provide further qualifications as to what she would be unable to do. "I would probably have to be somewhat retrained. I am finally remembering some the things I did in election. You know." *Id.* "I'm still going to therapy. Not even finished with that." *Id.* "I just don't feel confident yet that I could do what I was. With a little bit of prompting and things like that, yes." *Id.* "I am able to do my own insurance stuff now. I can write my own checks. I type. It's hard because of my vision, but it's all getting better." *Id.* The Amended Complaint leaves the reader wondering what the essential functions of the job are and if there could be a reasonable accommodation. The partial transcription of the pre-termination hearing does not address essential functions or accommodation. What is clear is that the Plaintiff had not been released to return to work in any capacity at the time of the per-termination hearing and she was still experiencing significant problems. Plaintiff's statement that she could return to work at the time of the termination notice with accommodation is a legal conclusion couched as a factual allegation, and not sufficient to satisfy pleading requirements.

The Plaintiff asserts in her Amended Complaint that Defendants failed to engage in any interactive process. (Doc. 21 ¶¶ 25, 34, 36, 37, 47, 48, 5, 53, 56, 63, 69, and 75). The portions of the transcript quoted in the Amended Complaint do not demonstrate that an interactive process occurred. The interactive process is envisioned to allow for a proper discussion and consideration of an employee's request for a reasonable accommodation.

10

"To facilitate the reasonable accommodation, '[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties.'" *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (alteration in original) (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)); see also 29 C.F.R. § 1630.2(o)(3). However, before an employer's duty to provide reasonable accommodations—or even to participate in the "interactive process"—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice. See, e.g., [*Smith v.*] *Midland Brake*, 180 F.3d [1154] at 1171 [(10th Cir. 1999)] ("In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations...."); *Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997) ("The 'employee's initial request for an accommodation ... triggers the employer's obligation to participate in the interactive process.'" (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996))); see also, e.g., *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) ("[E]ither by direct communication or other appropriate means, the employee must make clear that the [he/she] wants assistance for his or her disability." (alterations in original) (emphasis added) (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003)) (internal quotation marks omitted)); *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 23 (1st Cir. 2004) ("The request for accommodation must be sufficiently direct and specific, giving notice that she needs a special accommodation." (quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001)) (internal quotation marks omitted)).

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011).

The nature of the interactive process will be determined by the individual circumstances, but does require good faith participation by both parties.

"[T]he interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Midland Brake*, 180 F.3d [1154] 1171–72 [10th Cir. 1999] (footnote omitted). After such notice—which the record illustrates occurred here through Mr. Bartee's May 3, 1999, letter—"both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company...." Id. at 1172.

While "[t]he exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated[,]" id. at 1173, "[t]he interactive process [necessarily] includes good-faith communications between the employer and employee[,]" id. at 1172. As such, after receiving notice from Mr. Bartee, Michelin had a duty to engage with him in

11

a good faith effort to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. at 1171.

*Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004).

While Plaintiff asserts a failure to engage in an interactive process, she fails to address the matter that at the time of her pre-termination hearing she was not released by her medical care providers to return to work. Without the medical release, Defendants would have been unable to return the Plaintiff to any level of work. The Plaintiff was seeking an updated opinion from her neurologist regarding a medical release to return to work. The real issue which needed to be addressed was not her ability to return to work immediately, but rather when she would be released to work with, or without, accommodation. Any discussion of the nature of workplace accommodation would be futile absent the return to work medical release and any limitations noted therein.

The Amended Complaint clearly alleges that Plaintiff requested additional leave in order to continue her rehabilitation and gain the necessary work releases from her physicians. Plaintiff had a specific date scheduled with her physician which was a matter of weeks away. In addition, another physician had provided an expected return to work date of August 1, 2015. The pleadings adequately establish that if Plaintiff had been granted additional leave, such an accommodation may have allowed her to return to her previous job or another position. Is additional leave after the expiration of the Family Medical Leave a reasonable accommodation? The answer appears to be "yes." The interpretive guidance for the ADA states:

> Part 1630 lists the examples, specified in title I of the ADA, of the most common types of accommodation that an employer or other covered entity may be required to provide. There are any number of other specific accommodations that may be appropriate for particular situations but are not specifically mentioned in this listing. This listing is not intended to be exhaustive of accommodation possibilities. **For example, other accommodations could include permitting**

> **the use of accrued paid leave or providing additional unpaid leave for necessary treatment**, making employer provided transportation accessible, and providing reserved parking spaces. Providing personal assistants, such as a page turner for an employee with no hands or a travel attendant to act as a sighted guide to assist a blind employee on occasional business trips, may also be a reasonable accommodation. Senate Report at 31; House Labor Report at 62; House Judiciary Report at 39. (emphasis added)

29 C.F.R. Pt. 1630, App. —Interpretive Guidance to Title I of the ADA, § 1630.2(o).

The Tenth Circuit has found additional leave may constitute a reasonable accommodation. *Hudson v. MCI Telecomm's Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Rascon v. US West Commc'ns, Inc.* 143 F.3d 1324, 1334 (10th Cir. 1998); and *Taylor v. Pepsi-Cola Co.* 196 F.3d 1106, 1110 (10th Cir. 1999). In each of the above cited cases the court noted that an indefinite duration of leave is **not** a reasonable accommodation.

Defendants direct this court to a case where additional leave was held not to be a reasonable accommodation for a claim under the Rehabilitation Act, 29 U.S.C. § 794. *Hwang v. Kansas State Univ.*, 753 F.3d 1159 (10th Cir. 2014). The Rehabilitation Act mirrors the ADA and has the exact same elements.

> While *Den Hartog* concerned the ADA rather than the Rehabilitation Act, we note that the two Acts "impose identical obligations on employers." *Cisneros v. Wilson*, 226 F.3d 1113, 1124 (10th Cir. 2000). "Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge," *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999), and vice versa.

*Cummings v. Norton*, 393 F.3d 1186, n.2 (10th Cir. 2005).

In *Hwang* a professor at Kansas State University signed a one year contract to teach three semesters of classes. After signing the contract, Ms. Hwang was diagnosed with cancer. She requested and was granted six months of leave. As the spring semester approached, Ms. Hwang, at the suggestion of her doctor, requested additional leave until the end of the spring semester,

but promised to return to teach the summer semester. As the result of KSU's mandatory policy of limiting leave to six months, the contract was terminated. The case turned on a discussion of additional leave as a reasonable accommodation. In *Hwang* the court held that six months of additional leave under the circumstances was not a reasonable accommodation. This was a 12 month contract, and the plaintiff had yet to perform any work. *Hwang* recognizes that additional leave may be a reasonable accommodation and acknowledges the holding of *Rascon*. *Hwang* is not inconsistent with prior Tenth Circuit cases which hold that additional leave may be a reasonable accommodation under particular circumstances. The leave request must not be for an indefinite duration and it appears that leave requests of six months will not generally be considered reasonable.

Determination of whether additional leave request is a reasonable accommodation will depend on the circumstances of the matter and what hardship such leave would create for the employer. Nevertheless, a request for additional time of a specified duration may be considered a request for a reasonable accommodation. The Amended Complaint pleads a plausible claim in this regard.

### 3. Plaintiff suffered discrimination because of disability.

The factual pleadings establish that Plaintiff was terminated from her employment as a direct result of the County's belief that Plaintiff could not perform the functions of her job. Defendants were made aware of Plaintiff's desire for additional time to gain a medical release for return to work and that Plaintiff's treating physician had projected a return to work day of August 1, 2015. It cannot be contested by Defendants that Plaintiff was terminated from her employment as a result of her medical condition. Since the Plaintiff has sufficiently alleged a "plausible claim" that she could have performed the essential functions of her job with the

accommodation of additional unpaid leave, she has also met the pleading requirement for discrimination arising from disability.

### Claim II: Retaliation in Violation of the ADA, The Rehabilitation Act and Colorado Anti-Discrimination Act.

These three different statutes state substantively the same claim. The elements of a prima facie case of retaliation are:

1. The employee engaged in protected activity;

2. a reasonable employee would have found the challenged action materially adverse; and

3. a causal connection between the protected activity and the adverse employment action.

*Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1193 (10th Cir. 2007).

Plaintiff alleges that she engaged in a protected activity when she requested a reasonable accommodation. As noted above, the Plaintiff has alleged a plausible claim for accommodation in the form of extended leave. A request for accommodation is a protected activity under the ADA. *Selenke v. Mid. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 752 (10th Cir. 1999); and *Jones*, 502 F.3d at 1194. A key difference between a discrimination claim and a retaliation claim is that the person need not show he is disabled to prosecute a retaliation claim. *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016). An employer may retaliate against an employee who seeks the protection of the ADA, even if it turns out that the person is not disabled under the terms of the ADA. This does not impact our case as the Plaintiff was clearly disabled. Nevertheless, it is important to note that not all discrimination cases will involve retaliation and not all retaliation claims will involve discrimination under the ADA.

There is no debate as to the second element. Termination of employment is clearly an adverse action.

The third element addresses the relationship between the protected activity and the discharge. Neither party addresses this claim with much zeal. Plaintiff's complaint says that Defendants' refusal to engage in the interactive process, or restoring her to her job, not offering her an open available position that met her job qualifications and terminating her employment were all adverse employment actions. As discussed above Plaintiff's Amended Complaint fails to properly allege that she was able to return to work at the time of the pre-termination hearing. The Amended Complaint also fails to establish that there was an available open position for which she could perform the essential duties. The only plausible allegation is that Plaintiff requested additional leave and it was not granted, resulting in her termination. What remains is whether the Amended Complaint alleges a plausible claim that the termination of Plaintiff's employment was due to her engaging in protected activity.

On April 15, 2015 a notice was delivered to the Plaintiff that advised her she was being terminated because she could not perform the essential duties of her position. Defendants provided a pre-termination hearing on April 16, 2015. It was at this hearing that the Plaintiff requested additional time to obtain a medical release to work and informed Defendants that she had an appointment in a few weeks with a neurologist, at which time she hoped to gain a release to return to some type of work. (Doc. 21 ¶¶ 20 and 35). Defendants initiated the process to terminate Plaintiff prior to the April 16, 2015 hearing. This was prior to any alleged protected activity, including a request for a reasonable accommodation under the ADA in the form of additional leave. The termination was based upon Defendants' belief that Plaintiff could not perform the functions of her job, not because she requested additional leave. The alleged request for accommodation did not precipitate the termination; it just failed to avoid the termination. The Amended Complaint never plausibly alleges that Plaintiff was terminated because she

16

undertook protected action, a request for accommodation. Plaintiff must show that there was "a causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Plaintiff's Amended Complaint fails to allege a plausible action for retaliation.

### Claim III: Failure to Provide a Reasonable Accommodation

Plaintiff's Third Claim seeks to allege a separate claim based upon failure to provide a reasonable accommodation. While Plaintiff purports to cite a Tenth Circuit decision in this regard, no citation is provided in support of Plaintiff's statement. The case cited in the footnote by Plaintiff, *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010), does not hold that a failure to accommodate may be brought as a separate and distinct claim for discrimination under the ADA. Plaintiff's allegations contained within the third claim are duplicative of those within the first claim.

### CONCLUSION

The court RECOMMENDS that:

Count I not be dismissed;

Count II should be dismissed with prejudice; and

Count III should be dismissed without prejudice.

Dated this 4th day of January, 2018.

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE

17